ESSEX COUNTY COURT OF QUARTER SESSIONS.

STATE OF NEW JERSEY, PLAINTIFF, v. HARRY MEDIN-
KOWITZ, DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF, v. THOMAS CONBOY,
DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF, v. MICHAEL
SAMUELS, DEFENDANT.

**Liquor Law—Search Warrants—Statute Requires Liberal Construction but Not Violation of Express Provisions—Entire Subject of Search Warrants in Liquor Cases Considered.**

On motion to quash search warrants.

For the defendants, *Simandl & Simandl*.

UNGER, S. C. C.   By virtue of the provisions of paragraph 9 of "An act concerning intoxicating liquor used or to be used for beverage purposes" (*Pamph. L.* 1922, *ch.* 255), John J. Elliott, on July 9th, 1926, made complaint before a Supreme Court commissioner (who, by the act, is constituted a committing magistrate for that purpose), against a saloon on the southwest corner of Mulberry and Commerce streets, in the city of Newark, New Jersey, against a saloon at No. 5 Durand street, in the city of Newark, New Jersey, and against a saloon at No. 101 Mulberry street, in the city of Newark, New Jersey.

Each complaint was supported by the affidavit of the complaining witness, made before the commissioner, and by the affidavit of one Joseph Kaminski, and averred in substance that the complaining witness and Kaminski, on the morning of June 28th, 1926, visited the saloons in the city of Newark,

New Jersey, described in the affidavits, and there each ordered, was served with, and paid for, a glass of whiskey; that Elliott also ordered, was served with, and paid for, a glass of beer in each of the three saloons, and that the complaining witness had probable cause to suspect and did suspect that sections 10 and 15 of the act referred to above had been and were being violated at the designated saloon.

Thereupon, the commissioner, on July 9th, 1926, issued three search warrants, directing the officers named therein to search, in the daytime, the premises described in each, for any liquor kept or stored therein, and to bring it before the commissioner to be dealt with according to law.

The warrants were executed, liquor was seized in each of the saloons, and return was made by the officer in each case, on July 10th, 1926. Upon the return and on the same day the defendants appeared before me for hearing. Their counsel moved to quash all the warrants, setting forth in each case twenty-one grounds.

Under section 9 of the act the Supreme Court commissioner, as a "magistrate," is charged with the performance of any judicial act prior to the indictment of a violator of the act. *State* v. *Lowenthal*, 2 *N. J. Mis. R.* 18.

Under section 27 of the act it becomes the duty of the Supreme Court commissioner, sitting as a magistrate, to order the return of the property taken if it appears that the latter is not the same as described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued. With these provisions in mind, it becomes necessary to consider the grounds advanced by the defendants.

Section 10 of the act reads: "On and after the date when this act goes into effect, no person shall manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor * * *." Section 15 of the act is in the following words: "It shall be unlawful to keep, occupy or maintain any room, house, building, vehicle or place whatsoever, where liquor is manufactured, sold, kept, stored, transported, bartered, or otherwise disposed of in

violation of this act, and any such liquor found in, on or about any such room, house, building, vehicle or place, and all fixtures, equipment or paraphernalia had or used in connection with maintaining or conducting any such room, house, building, vehicle or place, shall be subject to seizure, forfeiture, confiscation and disposal as in this act provided. A search warrant may issue, as hereinafter provided, to search any of the premises or property herein mentioned."

In considering the grounds set up by the defendants in support of the motion to quash, it is necessary to look to the provision contained in section 10 of the act which reads: "* * * all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented." This legislative direction places the act, for the purposes of construction, on a plane with that class of statutes commonly termed remedial statutes, which must be liberally construed in order to advance the remedy and suppress the mischief. *Board of Conservation and Development* v. *Veeder*, 89 *N. J. L.* 561; 99 *Atl. Rep.* 335. Concerning such a legislative declaration, it is said in 36 *Cyc.* 1105: "The legislature may define certain words used in the statute, or declare in the body of the act the construction to be placed thereon, and the courts are bound by such construction, and all other parts of the act must yield, although otherwise the language would have been construed to mean a different thing. But the interpretation clause should be used only for the purpose of interpreting words that are ambiguous or equivocal, and not so as to disturb the meaning of such as are plain."

In *Snyder* v. *Compton*, 87 *Tex.* 374; 28 *S. W. Rep.* 1061, the Supreme Court of Texas held: "* * * in passing a law the legislature has the power to declare in the body of the act the construction which shall be put upon it. It is but a mode of expressing its intent, and that intent, however expressed, is binding upon the courts."

The first ground urged by the defendants is that none of the search warrants describe the person to be searched, nor is he named or in anywise mentioned in the warrant, nor

does the warrant or affidavit mention the name of the person from whom the whiskey was alleged to have been purchased, nor does it describe him as unknown.

Section 18 of the act provides: "A search warrant may be issued under this act by any magistrate, but only upon probable cause, supported by affidavit *naming or describing the person,* and particularly describing the property and the place to be searched."

The *"Espionage Act of Congress,"* U. S. Stat. at L. 1917, ch. 30, tit. 11, § 3, provides that a search warrant cannot be issued but upon probable cause, supported by affidavit "naming or describing the person and particularly describing the property and the place to be searched." This last is the counterpart of our own act, and undoubtedly the New Jersey provision was modelled after the enactment of congress. Construing the latter act, the case of *United States* v. *Kaplan,* 286 *Fed. Rep.* 968, hold: "If the name of the person be known it should be so stated, but, if not possible, a description of him should be given. If, however, the property sought is not in the possession of anyone, so far as can be ascertained, this should not prevent search and seizure, and it is permissible to recite that the owner of the premises or property is unknown. *United States* v. *Borkowski* (*D. C.*), 268 *Id.* 408. If at the time of the search and seizure the property be not in the possession of the party complaining, he will not be heard to object. His right of privacy will not have been invaded. *Haywood et al.* v. *United States,* 268 *Id.* 795 (*C. C. A. 7th Circuit*)." The court also said: "The warrant should be full and complete in itself."

In *United States* v. *Borkowski, supra,* the court said: "Where the name of the accused person is known, it should be stated in the affidavit and search warrant * * *. Frequently the name of the party is not known. In that case, the rule stated in *Daugherty* v. *Gilbert, Tapp.* 39, may be followed, it being there said that a warrant may be legal, although the name of the person charged is not inserted in it, provided he be properly described and it be stated that his name is unknown. Where it can be reasonably done, John

Doe warrants are to be avoided. Citing *United States* v. *Doe*, 127 *Fed. Rep.* 982, and *West* v. *Cabell*, 153 *U. S.* 78, and citing *Weaver* v. *Ficke*, 174 *Ky.* 432."

An examination of the warrants in the cases before me discloses that each of them fails to name the person from whom the property is to be taken, fails to describe him, and fails to state that he is unknown. Although the act must be liberally construed, its plain terms cannot be evaded. Liberal construction cannot countenance a failure to comply with the unambiguous and unqualified terms of the act. Execution of a search warrant is far more distressing and humiliating to a citizen than any other form of process, and, therefore, should be attended with all the safeguards which the legislature has in unequivocal language seen fit to throw about it.

The warrants in this case must, therefore, be quashed and the evidence obtained through their execution must be suppressed. It may not be amiss, however, to examine some of the other grounds set up by the defendants.

The second point made is that none of the warrants contains provisions requiring it to be executed and returned to the magistrate issuing it, within ten days after its date. Section 23 of the New Jersey act reads: "A search warrant must be executed and returned to the magistrate who issues the same within ten days after its date; after the expiration of this time the warrant, unless executed, is void."

Section 11, under title 11 of the Espionage act, *supra*, is exactly in the same words. Construing the latter enactment, the United States Circuit Court, in *Giles* v. *United States*, 284 *Fed. Rep.* 208, said: "There is no provision in the warrant requiring it to be executed and returned within ten days. While it may be argued that the requirement that the officer 'shall report and act concerning the same as required by law' is by implication a provision for a return, so as to relieve the warrant of one of the objections urged by Otis against the writs of assistance, yet, the great weight of authority is that the warrant should be specific and complete within itself. The officer serving it should not be left to ascertain and judge

of the requirements of the law." This defect in the warrants furnishes another ground for granting the defendants' motion.

The defendants further contend that the search warrants do not particularly describe the property to be seized. The point is made that the affidavits were all founded on an alleged purchase of whiskey, and it is argued that the search warrants should not have contained a command to seize any other liquors than whiskey. The warrants commanded the officers to whom they were directed to seize "any liquor on said premises." The answer to this contention is found in section 2 (B) of the act, which reads: "In any complaint, warrant, accusation, allegation or indictment, the word 'liquor' shall be a sufficient description of any or all of the liquors or liquids defined herein."

This provision permits the use of the word "liquor" in a search warrant as a sufficient description of any one or all of the liquors or liquids mentioned in the act. This ground is therefore untenable.

Another ground advanced by the defendants is that the warrants did not contain a statement that the commissioner issuing the same found probable cause for their issuance. In *United States* v. *Borkowski, supra,* the court said: "The question of probable cause must be submitted to the committing magistrate so that he may exercise his judgment as to the sufficiency of the ground for believing the accused person guilty * * *. The United States commissioner, or other officer with whom an affidavit is filed, must not, simply because such affidavit is presented, issue a warrant."

In *United States* v. *Harnich,* 289 *Fed. Rep.* 256, it was held: "The finding of the legal conclusion or of probable cause from the exhibit of facts is a judicial function, and it cannot be delegated by the judge to the accuser."

Section 19 of the New Jersey act provides that "if the magistrate is satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, he must issue a search warrant, * * * stating the particular grounds or probable cause for its issue * * *." The warrants under consideration merely state that "John

V. Elliott has probable cause to suspect and does suspect." There is nothing contained in the warrants to inform the person upon whom they are to be served that the commissioner was satisfied that there was probable cause for the issuance of the warrants. It is the magistrate who must be satisfied and it is the magistrate who must state in the warrant that he finds probable cause for its issue. None of the warrants contains a statement by the commissioner that he finds probable cause, or a statement of the particular grounds or any grounds that he finds, for issuing the warrants, and upon this ground, also, the motion must prevail.

The point is also made that the warrants did not particularly describe the premises to be searched, and they were, therefore, invalidated. The descriptions contained in the warrants are as follows: "* * * at and within the building known and designated as the southwest corner of Mulberry and Commerce streets, Newark, New Jersey, and in the saloon located at the southwest corner of Mulberry and Commerce streets, Newark, New Jersey * * *." The command in the same warrant reads in part as follows: "* * * to enter in the daytime into the said building and saloon * * * known and designated as the southwest corner of Mulberry and Commerce streets in said city * * *."

The description in the second warrant reads: "* * * within the saloon and building on Durand street, Newark, New Jersey, known and designated as a separate building in the rear of a closed building at No. 56 Mulberry street, corner Durand street, Newark, New Jersey * * *." The command in the same warrant reads as follows: "* * * to enter in the daytime the said building and saloon * * *," and then proceeds in the words of the description above.

The third warrant describes the premises as follows: "* * * at and within the building known and designated as No. 101 Mulberry street, Newark, New Jersey * * *." The command in the same warrant reads: "* * * to enter in the daytime into the said building and saloon within

the city of Newark, New Jersey, and known and designated as No. 101 Mulberry street, in said city * * *."

In *United States* v. *2,615 Barrels more or less of Beer et al.*, 1 *Fed. Rep.* (2d ed.) 500, the court said: "It must not be forgotten that a warrant is a command, which must be obeyed. It is true that the persons to whom it is directed are expected to use judgment and discretion in its execution, but the command is none the less imperative. Such a command should not direct a search which would be wholly unjustified. If the place described by street and number is used by a number of persons for different purposes, then it is not a place; but there are several places included in the one description. It is then a general, but not a 'particular' description. * * * The description was too broad, and included premises to search which no probable cause appeared."

In *United States* v. *Innelli*, 286 *Fed. Rep.* 731, the court, in considering objections to the warrant, said: "A further one is directed to the description of the place. It is described by street and number, and the name of the person to whom the premises then or formerly belonged. * * * The description was too broad, and included premises to search which no probable cause appeared. This does not mean that the facts are to be found after the search, and the warrant upheld or not, according as the facts are made to appear. The finding under review is one not of guilt, but of probable cause * * *. Had the whole premises included within the description belonged, as was doubtless erroneously taken for granted, to the person whose place was meant to be searched, such a description as that given might meet all practical needs."

The descriptions quoted above authorize a search of both the building and the saloon, and in one of the warrants, that relating to the Durand street building, in the rear of a closed building, it may be observed that the officers could have searched any building in the rear of the closed building at No. 56 Mulberry street, corner of Durand street, as long as the building was on Durand street and was a separate building. In each of the other two cases, the saloon is not

the only part of the building which is tenanted. The warrants, therefore, do not "particularly" describe the premises, and this ground of attack must also prevail.

The purpose of such strict conformity with the requirements of the law is perfectly obvious. By the fourth amendment of the constitution of the United States, it is provided that: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In *Gouled* v. *United States*, 255 *U. S.* 298, the court said, speaking of this amendment among others: "It has been repeatedly decided that these amendments should receive a liberal construction so as to prevent stealthy encroachments upon or 'general depreciation' of the rights secured by them, by imperceptible practice of courts or well-intentioned but mistakenly over-zealous executive officers." The rights of personal security and personal liberty have always been regarded as the very essence of constitutional liberty, and while the New Jersey act must be liberally construed in order to prevent the sale of intoxicating liquors for beverage purposes, it certainly was not the intention of the legislature to permit the courts to dispense with the safeguards thrown about that extraordinary procedure accomplished by search warrant.

The warrants are quashed; the evidence obtained through their execution is suppressed and the property is directed to be returnd.